CAROLYN SMITH AND ERRON LEE SMITH, JR., Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket No. 34657-85
United States Tax Court
T.C. Memo 1988-420; 1988 Tax Ct. Memo LEXIS 438; 56 T.C.M. (CCH) 62; T.C.M. (RIA) 88420; September 6, 1988
Erron Lee Smith, Jr., pro se Matthew J. Fritz and David R. Reid, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined deficiencies in petitioners' *440 Federal income tax and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1) [1]
Sec. 6653(a)(2)
Sec. 6659
1979
$ 3,690.00
$ 184.50
--
$ 1,107.0l0
1980
3,370.00
168.50
--
1,011.00
1981
4,625.00
231.25
*
1,387.50
1982
3,368.00
168.40
*
1,010.40
1983
486.00
24.00
*
--
Respondent also determined that all or a part of the underpayments of tax for the years 1979, 1980, 1981 and 1982 were substantial underpayments attributable to tax-motivated transactions under section 6621(c). [2]
The issues to be decided are: 1) whether petitioners are entitled to an investment tax *441 credit for the 1982 tax year with carry backs to 1979, 1980 and 1981; 2) whether petitioners are entitled to deduct lease payments in 1982 and 1983 in connection with an equipment lease agreement; 3) whether petitioners' underpayments of tax for the years 1979 through 1983 are due to negligence or intentional disregard of rules and regulations; 4) whether and to what extent petitioners' underpayments of tax for the years 1979 through 1982 are attributable to a valuation overstatement and 5) whether, and to what extent, petitioners' underpayments of tax for the years 1979 through 1982 are substantial underpayments attributable to tax-motivated transactions. FINDINGS OF FACT Some of the facts were stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in Urbana, Illinois at the time they filed their petition in this case. In 1982, petitioner Erron Smith ("petitioner") became aware of the program at issue through Tims Quinn, an investment counselor, and through a promotional marketing brochure entitled "Stress Management and Bioenergy: A Computer Multi Media Hardware/Software Lease Program. *442 " The program was operated by Larry and Gaile Holland under the name Holland Energy Resources ("H.E.R."). According to the promotional literature, the program was to work as follows: H.E.R. would purchase, in exchange for cash and notes totalling $ 150,000 per set, individual master copies of a computer software program entitled "Lifenergy." H.E.R. would then lease to individual taxpayers [3] this software master, together with some electronic hardware, audio and video tapes and a handbook, all of which made up the "Lifenergy System." The lease term was 5 years, and the taxpayer was to pay $ 9,000 plus a percentage of proceeds from sales of copies of the computer software. The taxpayer was then to use his best efforts to market copies of the computer software, either individually or through an agent. The computer software was the only part of the Lifenergy System which the taxpayer-lessee was entitled to reproduce. The property was to be placed in service in 1982. H.E.R. would elect to pass through the investment tax credit of $ 15,000 to each lessee. The cover of the promotional material states: *443 No notes 400% Write-off Non Security ITC & Depreciation The first paragraph of the brochure reads as follows: Holland Energy Resources invites the taxpayer to participate in a unique and dynamic "Stress Management and Bioenergy" Computer and Multi Media Hardware/Software Tax Shelter for 1982! The 4 to 1 lease program is a combination Computer Hardware/Software with Audio and Video Hardware/Software. The brochure then outlined problems caused by stress and how the Lifenergy software was designed to reduce stress. There followed a detailed discussion of the "financial aspects of the tax shelter" and included a statement that "every detail of the newly elected tax bill, the Economic Recovery Tax Act of 1981 has been scrutinized in order to take advantage of every item of tax relief * * * ." The materials included a section on tax information which discussed the availability of the investment tax credit as well as the possibility of a challenge by the Internal Revenue Service ("IRS"). This section also included a sample tax form illustrating the computation of the credit, several pages of questions and answers, a tax opinion letter and a statement that H.E.R. agreed to *444 fund the legal costs of the first review and appeal within the IRS should an audit occur as a result of participation in the program. The tax section constituted 22 pages and represented approximately 50 percent of the brochure. The promotional material included a purported appraisal of the value of the software by Mark Marrero, a designer and marketer of computer software. The appraisal stated that Marrero had been retained by H.E.R. to perform an independent appraisal and concluded that $ 200,000 was a reasonable stated value for the computer software. For unexplained reasons, however, the value assigned to the Lifenergy System was $ 150,000. During the course of trial, it was established that the signature on the appraisal had been forged. After reviewing the promotional materials, petitioner called H.E.R. and asked questions of them regarding the legality of the program. Additionally, he took the materials to two other investment counselors and asked them to render an opinion as to whether or not the program was above board. They indicated that, based on the amount of time they had spent evaluating the information, the program was valid and that there would not be a problem *445 with the investment tax credit as long as the information provided was accurate, true and correct. Petitioner was not charged a fee by these investment counselors because they did not spend much time on making their evaluation. Additionally, petitioner took the promotional materials to an IRS office in Champagne, Illinois and asked if they would look at the program to determine its legality. Petitioner was told that the IRS did not have the time or the interest to evaluate the worth of the program and suggested that he take it to an investment counselor. Petitioner did not review any part of the Lifenergy System before he entered into the lease with H.E.R. The Hollands had engaged Gail Troxell to develop the stress management program, including the computer software and video and audio tapes. For her services, Troxell received no more than $ 16,000. Neither the Hollands nor H.E.R. ever gave Troxell any promissory notes. On December 27, 1982, petitioner entered into an agreement for the lease of the "computer hardware/software media package." At that time, petitioner made a down payment in the amount of $ 3,000 paid with either a cashier's check or money order. Additionally, *446 petitioner executed a note in the amount of $ 6,000 to Capital Financial Services, the investment office of which Tims Quinn was the president. On his tax return for the 1982 tax year, petitioner claimed an investment tax credit in the amount $ 2,921. Additionally, in March 1983, petitioner filed a claim for refund based on the carry back of the unused tax investment credit to the years 1979, 1980 and 1981. Petitioner received the refund and used $ 6,000 of the amount refunded to pay the balance due on the lease agreement. As a result of entering into this arrangement, petitioner received an Apple II computer with monitor and disk drive, a Toshiba video cassette recorder, computer software and audio and video tapes. Petitioner leased the computer to his employer and used the video cassette recorder to duplicate tapes of movies and television programs that were then sold. Petitioner also duplicated the stress management video tape. Petitioner never reproduced any of the computer software. Petitioner testified that he had entered into an arrangement with an entity known as "The Profit Center" which was to market copies of the computer software. However, petitioner produced no *447 evidence of this agreement. Petitioner never received any payment from the alleged marketing entity. Kenneth Cleverly, a valuation engineer for the IRS and a duly qualified expert, appraised the value of the Holland Energy Resources Stress Management and Bioenergy Software at $ 30,400. Based on prices of comparable software, Mr. Cleverly determined that the value of each reproduced unit from petitioner's master was $ 38. He then assumed an average of 20 sales per month for a period of 5 years, deducted a pretax profit of 15 percent and discounted future sales to arrive at the $ 30,400 figure. Cleverly appraised the Apple II computer at $ 1,500 and the Toshiba video cassette recorder at $ 500 to bring the total value of the Lifenergy System to $ 32,400. The record here contains evidence of only two actual sales of the Lifenergy package consisting of the computer software and video tape. Each sale was for $ 56.29. Petitioner reported the income from his sales of reproduced movies and television programs on a Schedule C, Profit or (Loss) from Business or Profession, attached to his Federal income tax return for the taxable year 1983. Additionally, petitioner deducted $ 1,800 *448 as the equipment lease payment on the Schedule C attached to each of his returns for 1982 and 1983. OPINION Respondent's determinations are presumed correct, and petitioner bears the burden of proving otherwise. ; Rule 142(a). Deductions are a matter of legislative grace. . Taxpayers bear the burden of proving their entitlement to the deductions they claim. For the reasons set forth below, we find that petitioner's activities lacked economic substance and that petitioner is not entitled to any losses, deductions or credits arising out of the equipment lease with H.E.R. An investment tax credit is available only for property with respect to which depreciation is allowable. Section 48(a). Depreciation deductions are available only with respect to property which is used in a trade or business or held for the production of income. Sections 167(a); 168(c)(1). Thus, in order to qualify for the investment tax credit claimed on his Federal income tax return for the taxable year 1982 and carry backs for the *449 years 1979, 1980 ad 1981, petitioner must establish that his activities with respect to the lease with H.E.R. constituted a trade or business or were undertaken for the production of income. . Respondent has argued that petitioner's activities were not engaged in for profit according to the subjective test of a profit objective in section 183. Petitioner maintains that he entered into the equipment lease with the intent of making a profit. In , this Court set forth an objective test under which certain transactions are disregarded if they are found to be devoid of economic substance. This test incorporates the objective factors found to be relevant in cases decided under section 183, as well as concepts underlying sections 38, 162, 167 and 212. We are faced with a complete lack of evidence which would support petitioner's claimed tax benefits. What evidence the record does contain strongly supports respondent's arguments that the activities were entered into solely for tax benefits. We find it significant that the promotional materials for the Lifenergy program *450 characterized the program as a tax shelter. Furthermore, a substantial portion of the brochure consisted of a discussion of the tax benefits and associated risks. Petitioner's attempts to solicit the opinions of investment counselors other than the one who brought the program to his attention were skimpy at best. They were not designed to determine the profitability of the program, but rather only whether the tax advantages claimed could in fact be achieved. These counselors clearly notified petitioner that they had made no attempt to determine the truth of the information contained in the brochure. Since the record lacks evidence which would substantiate petitioner's testimony that he entered into this lease program to earn a profit, we are compelled to conclude that petitioner's activities did not constitute a trade or business, nor were they carried on for the production of income. Therefore, petitioner is not entitled to an investment tax credit. Although our conclusion that petitioner's activities were not entered into for profit effectively disposes of the tax credit issue, we note further that the record lacks any evidence as to when the property was placed in service. *451 Considering that the equipment lease was not entered into until December 27, 1982, we find it highly unlikely that petitioner placed the hardware or software in service in 1982. Additionally, in , we determined that computer software is not tangible personal property or other personal property eligible for the investment tax credit. Therefore, no investment tax credit would be available to the extent it was based on the value of the software. Next, we consider petitioner's entitlement to deductions for lease payments in 1982 and 1983. Section 162(a) provides a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Section 212 provides that, in case of an individual, a deduction is allowed for all ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income. Since we have determined above that petitioner's activities did not constitute a trade or business, nor were they carried on for the production of income, petitioner is not entitled to deduct the lease payments made to H.E.R. in 1982 and *452 1983. We now consider whether petitioner's underpayments of tax for the years 1979, 1980, 1981, 1982 and 1983 were due to negligence or intentional disregard of rules and regulations under section 6653(a). Negligence has been defined as a lack of due care or failure to do what a reasonable and ordinarily prudent person would do in a similar situation. . In this respect, petitioner depends in large part on the fact that he took the promotional materials to two investment counselors who apparently stated to him that if everything in the materials were true and accurate, the tax benefits would be legitimate. Although we note that this is more than many taxpayers have done, it is nevertheless insufficient to constitute the exercise of due care. Petitioner was aware that these counselors spent a minimal amount of time on their evaluations of the program as evidenced by the fact that petitioner was not charged a fee for rendering these opinions. Furthermore, there is no indication that petitioner asked either one of them to assess the profitability of the program aside from its claimed tax benefits. Accordingly, we cannot *453 conclude that petitioner exercised due care in determining his entitlement to the claimed benefits. Respondent has also determined that petitioner's underpayments of tax for the years 1979, 1980, 1981 and 1982 are attributable to a valuation overstatement under section 6659. [4] A valuation overstatement exists if the value of the property (or adjusted basis) claimed on a return is at least 150 percent greater than the amount determined to be the correct value (or adjusted basis) of the property. Section 6659(c). Petitioners claimed an investment tax credit based on a $ 150,000 value of the package they received which consisted of the hardware, software and audio and video tapes. However, we concluded above that the value was $ 32,400. Since $ 150,000 is more than 150 percent of $ 32,400 the amount determined to be the correct value, petitioners are liable for the addition to tax for a valuation overstatement. Furthermore, since the valuation claimed exceeded 250 percent of the value determined to be correct, the applicable percentage to be used in computing the amount of the addition to the tax under section 6659(b) is 30 percent. See . *454 [5]
Finally, we turn to respondent's determination that the deficiencies for the years 1979 through 1982 are due to tax-motivated transactions for purposes of computing interest on the deficiencies. Section 6621(c) provides for an increase in the rate of interest payable under section 6601 with respect to a "substantial underpayment" (defined as an underpayment in excess of $ 1,000) attributable to a tax-motivated transaction. Section 6621(c) (3) (A) enumerates types of transactions which are to be considered "tax-motivated transactions." These transactions include any valuation overstatement within the meaning of section 6659(c). Since we have determined above that a portion of the underpayments for the years 1979 through 1982 are attributable *455 to a valuation overstatement under section 6659(c), with respect to the underpayments attributable to the disallowed credits, petitioner is liable for the additional interest according to the provisions of section 6621(c). [6]
With respect to the portion of the underpayment attributable to the lease payments, deductions disallowed for any period under section 183 relating to an activity not engaged in for profit are included in respondent's temporary regulations as attributable to tax-motivated transactions. Sec. 301.6621-2T O-4, Temp. Proced. & Admin. Regs., (Dec. 28, 1984); ; see . We conclude above that petitioner lacked the requisite profit objective with respect to the Lifenergy program. Thus, the increased rate of interest also applies *456 to the portion of the underpayment attributable to the disallowed deductions for lease payments. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. For 1979 and 1980, the additions to tax for negligence or intentional disregard of rules and regulations were determined under section 6653(a). ↩
*. 50 percent of the interest due on the underpayment. ↩
2. Former section 6621(c) was redesignated as section 6621(c) pursuant to section 1511(c), Tax Reform Act of 1986, 100 Stat. 2744. ↩
3. The promotional materials referred to potential investors as taxpayers. ↩
4. Regarding the effective date of section 6659 and its applicability to credit carry backs, see . ↩
5. The addition to tax under section 6659 does not apply to that part of the underpayment attributable to the disallowed lease payments. See . However, we do not understand respondent to so have computed the addition. ↩
6. Additional interest applies only after December 31, 1984, and not withstanding that the transaction was entered into prior to that date. , affd. per curiam without published opinion . ↩